**SHIQI XUE, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 09–2901.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 26, 2010.

Opinion filed: June 4, 2010.

Vlad Kuzmin, Esq., Kuzmin & Associates, New York, NY, for Petitioner.

Steven F. Day, Esq., Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: FUENTES, ROTH AND VAN ANTWERPEN, Circuit Judges.

## OPINION

PER CURIAM.

Shiqi Xue, a native and citizen of China, seeks review of a May 29, 2009 decision by the Board of Immigration Appeals ("BIA"), dismissing his appeal from the denial of his requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

### I.

Xue arrived in the United States in 2006, without proper documentation. In May 2007, he filed an application for asylum, withholding of removal, and protection under the CAT, in which he alleged that his wife had suffered a forced abortion and sterilization in China and that his business had been shut down by the Chinese family planning authorities as a result of their violation of China's population control laws. At his merits hearing, Xue testified that he was married in 1996, and had his first child, a daughter, on January 9, 1997. (AR 173.) He testified that in March 1997, at the request of family planning officials, an IUD was implanted in his wife. (AR 174.) At some point in 2002, however, the IUD fell out and Xue's wife became pregnant. (AR 175, 197.) Xue testified that when his wife was about five or six months pregnant, she traveled to her mother's house for New Year's Eve. The family planning officials in that village found out about the pregnancy and forced her to undergo an abortion. (AR 176–177.) Xue testified that he did not learn of the abortion until the following day because he had been at work at a construction site for the previous two days without access to a phone. Xue testified that when he found out he was very angry and went directly to the family planning office, but it

was midnight and the doorman would not let him in. (AR 177.) He then went to his mother-in-law's house, where his wife confirmed that she had been forced to terminate her pregnancy. (AR 178.)

About a month later, Xue's wife was fitted with another IUD. (AR 178–79.) Xue testified that he wanted more children, so in February 2004, he hired a private doctor to remove the IUD. (AR 179.) In June 2004, Xue and his wife learned that she was pregnant again. (*Id.*) Xue told his wife to remain home from work and limit contact with outsiders to avoid detection. (*Id.*) In June 2004, Xue's wife skipped her check-up appointment with the family planning authorities. (AR 225.) Xue testified that during the same month he went to a government agency to request a replacement marriage certificate. (AR 224.) Xue's second child was born on February 15, 2005. According to Xue, the family planning officials found out about the birth, and on July 14, 2005, they came to his office looking to sterilize, arrest, and fine him. (AR 190.) Xue was not there at the time, but found out when a co-worker called him and told him that officials had come looking for him and had closed down his business. (AR 191.)

Xue testified that after this incident, he decided to escape. (AR 192.) He went to a friend's house for four months, then to his wife's sister's house for two months, and then on April 16, 2006, he left China. (*Id.*) He now lives in New Jersey with his cousin and works for a construction company in New York City. Xue maintains that the family planning authorities were asking his co-workers questions about him and his whereabouts as recently as 20 days prior to his merits hearing. (AR 226–27.) He also testified that while he was still in hiding at his friend's house in China, he talked to his wife and she told him that she had been forcibly sterilized. (AR 193.)

Xue testified that he is afraid to return to China because he believes that he will be jailed and punished for violating the family planning policy. (AR 194.)

Applying REAL ID ACT standards, the IJ found that Xue's testimony lacked credibility because it was unclear, inconsistent, and contained multiple discrepancies and omissions that went to the heart of his claims. The IJ further found that, even assuming his credibility, Xue had not carried his burden of demonstrating that he suffered past persecution or possessed a well-founded fear of future persecution. The IJ also found that Xue did not demonstrate eligibility for withholding of removal or CAT protection because those claims were based on the same testimony that the IJ had determined was not credible. Xue appealed. The BIA dismissed Xue's appeal, holding that even if Xue had testified credibly, he had not established past persecution based on his wife's forced abortion and sterilization, or a well-founded fear of future persecution on account of "other resistance" to the population control law. The BIA also concluded that the IJ's credibility determination was not clearly erroneous. This petition for review followed.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a). When the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's decision, "we have authority to review the decisions of both the IJ and BIA." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir.2004). We review adverse credibility determinations for substantial evidence. *See id.* Because Xue filed his asylum application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or falsehoods upon which the adverse credibility finding is based need not go the

heart of his claim. *See Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir.2007). Rather, the REAL ID Act permits credibility determinations to be based on observations of Xue's demeanor, the plausibility of his story, the consistency of his statements, or "any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). We must defer to and uphold the IJ's adverse credibility determinations "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir.2003) (citations omitted).

## III.

Xue protests that the IJ's adverse credibility finding was neither specific nor cogent, and was based on factual determinations unsupported by the record. We have closely reviewed the record and conclude that substantial evidence supports the adverse credibility determination in this case. Both the BIA and IJ provided numerous reasons for concluding that Xue lacked credibility. First, the IJ noted that although Xue testified that he had been working at a construction company when his wife was taken to have the abortion, this employer is not listed anywhere on his I–589 application. Xue's explanation for this omission was that he did not think it was important, even though this job kept Xue from finding out about the abortion until the following day—a key aspect of his testimony concerning this incident. Second, the IJ found it inconsistent that Xue would have sought to replace his marriage certificate in June 2004, the same month that his wife purposely missed her gynecological exam, in light of his testimony that he had told his wife they needed to be careful and limit contact with outsiders while she was pregnant. When questioned

about his motivation, Xue initially stated that he was not afraid to renew the certificate because his wife had not missed her checkup yet, but after he was shown his I–589 indicating that she missed her appointment in June 2004, Xue changed his testimony and stated that he was not concerned because the marriage certification and family planning offices were located in different parts of town. (AR 225.) The IJ was also troubled by Xue's testimony that officials in China are still looking for him. Xue testified that twenty days or so before his hearing, his wife told him that his former co-workers were approached by plain clothes officers identifying themselves as family planning officials and looking for Xue to arrest him. However, this information came to light only through questioning at the end of the hearing, and was not provided in his I–589 or in any other document. Xue testified that he did not think to amend his application, but as this testimony concerns the very reason that Xue is afraid to return to China, the IJ found it to be a last-minute attempt to buttress his claim. The record does not compel a contrary conclusion.

The BIA reviewed the IJ's decision and concluded that the IJ was not unreasonable in finding that Xue's testimony was generally convoluted and non-responsive. The BIA also noted Xue's lack of evidence or affidavits corroborating key parts of his claim, such as the claim that he owned a business, or that family planning officials were still looking for him. In response, Xue attempts to demonstrate that his testimony was internally consistent, and that his explanations for failing to provide corroboration were reasonable. Although Xue may be able to rehabilitate his testimony in one or two respects,[1] we find that

---

1. For example, we agree that Xue's testimony that he went to his mother-in-law's house on December 29th, not December 28th, was

eventually clarified on cross-examination. However, the IJ's assessment that Xue's testimony about this incident was "not forthright

the IJ's adverse credibility determination is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002) (citations omitted).

With respect to Xue's claims under CAT, the BIA found that Xue had not claimed that he had been tortured in the past, and failed to establish that he more likely than not would suffer torture in the future. This assessment is also supported by substantial evidence. The IJ found that, for essentially the same reasons that he did not present credible evidence of past persecution, Xue did not present credible evidence that anyone in China would seek to torture him upon his return.

### IV.

Accordingly, the petition for review will be denied.

or straightforward or candid" is also supported by the record. (AR 59.)